IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |
|---|---|
| IN THE MATTER OF THE COMPLAINT OF AMERICAN RIVER TRANSPORTATION COMPANY, A CORPORATION, FOR EXONERATION FROM, OR LIMITATION OF, LIABILITY. | ) ) ) ) ) ) ) No. 07 C 218 ) ) ) ) ) |

**MEMORANDUM OPINION AND ORDER**

American River Transportation Company ("Artco") filed suit under the Shipowner's Limitation of Liability Act ("Limitation Act"), 46 App. U.S.C. § 183(a) (repealed and recodified in slightly modified form at 46 U.S.C. § 30505), seeking to limit its liability in connection with a collision that took place between a barge towed by one of its vessels and a speedboat operated by Jason Aardema ("Aardema"). Artco has moved for partial summary judgment on the question of whether Aardema was operating the watercraft while under the influence of alcohol. For the reasons explained below, the motion is granted.

**I.**

On September 14, 2006, a speedboat driven by Jason Aardema collided with a barge pushed by the Donna Jean, a towboat owned and operated Artco. As a result of the collision, Mark Bigos was killed, and a number of others were injured. Aardema was charged

under Illinois law with three offenses: (1) operating a watercraft under the influence of alcohol in violation of 625 ILCS 45/5-16(A)(1)(a); (2) operating a watercraft under the influence of alcohol in violation of 625 ILCS 45/5-16(A)1.(b)/5; and (3) reckless homicide in violation of 720 ILCS 5/9-3(a).

Civil suits were later filed against Artco in connection with the accident, prompting Artco to file the instant petition under the Limitation Act. Essentially, the Limitation Act "allows a vessel owner to limit liability for damage or injury, occasioned without the owner's privity or knowledge, to the value of the vessel or the owner's interest in the vessel." *Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 446 (2001); *see also* 46 U.S.C. § 30505. The court first determines "what acts of negligence or conditions of unseaworthiness caused the accident." *Tug Allie-B, Inc. v. United States*, 273 F.3d 936, 944 (11th Cir. 2001). The court then "must determine whether the shipowner had knowledge or privity of those same acts of negligence or conditions of unseaworthiness." *Id.*

In January 2009, Aardema pleaded guilty in the state criminal proceedings to Count I of the indictment. In exchange, the remaining two counts were dropped, and Aardema was sentenced to "four years in the Illinois Department of Corrections," Plea Tr., Artco Ex. E at 7:4-5 (Doc. 223-5), with a recommendation from the judge that Aardema be placed in a boot camp program in lieu of prison. Aardema was admitted to the camp and released 120 days

later after he had completed the program.

According to Artco, despite pleading guilty to operating a watercraft while under the influence of alcohol, Aardema subsequently testified in a September 2009 deposition in the instant action that he was not under the influence of alcohol at the time of the accident. Aardema Dep., Aardema L.R. 56.1 Stmt. of Add'l Facts, Ex. 8 at 74:2-23 (Doc. 228-8). Artco's motion for partial summary judgment argues that under the doctrine of collateral estoppel, Aardema is precluded from relitigating the issue of whether he was under the influence of alcohol at the time of the accident.

## II.

### A. Legal Standard

Summary judgment is granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A party opposing summary judgment must "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). There is no genuine issue for trial unless there is "sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Id.* at 248.

Here, Artco does not purport to seek summary judgment with

respect to the entire litigation; instead, the motion is ostensibly limited to the question of whether Aardema was under the influence of alcohol at the time of the accident. At the outset, Aardema argues that such a motion for partial summary judgment is improper. According to Aardema, a motion for "partial" summary judgment is permissible only where it seeks to dispose of an entire claim or count asserted in a complaint. Aardema maintains that Artco's motion would not result in the disposition of an entire claim, since even if he were precluded from relitigating the question of whether he was under the influence of alcohol at the time of the accident, it would still be necessary to determine whether Artco played a causal role in the accident. Consequently, he argues that Artco's motion must be denied.

Simply put, Aardema is mistaken. Rule 56 clearly permits a court to grant summary judgment on less than an entire claim. To be sure, there are cases that appear to support Aardema's position. *See, e.g.*, *Petroff Trucking Co., Inc. v. Envirocon, Inc.*, No. 05-CV-414-WDS, 2006 WL 2938666, at *3 (S.D. Ill. Oct. 3, 2006) (noting that "there is reasonable debate on the propriety of granting partial summary judgment on a motion that seeks to dispose of less than an entire claim"); *see also Miller v. Trans Union LLC*, No. 06 C 2883, 2007 WL 641559, at *6 (N.D. Ill. Feb. 28, 2007) ("Plaintiff is not entitled to partial summary judgment on the issue of whether [the defendant] had a permissible purpose. Rule 56(a)

does not authorize summary judgment on part of a claim. Neither does Rule 56(d) authorize a partial summary judgment.")(quotation marks omitted). Nevertheless, Seventh Circuit precedent is clearly to the contrary. Thus, for example, writing for the court in *Zapata Hermanos Sucesores, S.A. v. Hearthside Baking Co., Inc.*, 313 F.3d 385 (7th Cir. 2002), Judge Posner explained:

> Rule 56(d) of the civil rules is explicit in allowing the judge to grant summary judgment on less than the plaintiff's whole claim, and there is no hint of any requirement that the grant carve at a joint that would permit the judge to enter a final judgment under Rule 54(b). If the plaintiff had two separate claims, and the judge granted summary judgment on one and set the other for trial, he could also if he wanted enter final judgment on the first dismissal, enabling the defendant to appeal immediately under Rule 54(b). If instead the plaintiff had . . . one claim, and the judge granted it in part, the defendant could not appeal -- the conditions of Rule 54(b) would not be satisfied -- yet it is evident from the wording of Rule 56(d) that this would be a proper partial summary judgment, for the rule expressly authorizes an order specifying the facts that appear without substantial controversy[.]

*Id.* at 391 (quotation marks omitted).

Hence, it is entirely appropriate for Artco to seek partial summary judgment on the issue of whether Aardema was under the influence of alcohol at the time of the accident.

**B.  Collateral Estoppel**

Turning to the merits of the motion, Artco's argument is quite simple: it claims that in pleading guilty to the criminal charges brought against him, Aardema admitted that he was operating the watercraft under the influence of alcohol, and that as a

consequence, he should be collaterally estopped from relitigating that issue for purposes of the instant suit.

In order to assess this argument, it is first necessary to determine which body of law supplies the rule of decision. Artco appears to believe that the federal law of issue preclusion applies here. It does not. Under the Full Faith and Credit Act, 28 U.S.C. § 1738, a federal court must give the same preclusive effect to a state court ruling as would be given by a court in the rendering state. *See, e.g., Donald v. Polk County*, 836 F.2d 376, 382 (7th Cir. 1988); *see also Reynolds v. Jamison*, 488 F.3d 756, 762-63 (7th Cir. 2007) (since plaintiff was convicted in Illinois state court, court was required to look to the law of Illinois to determine the estoppel effect of his guilty plea). Since Aardema pleaded guilty in Illinois state court, the question is whether, under Illinois' law of collateral estoppel, the conviction based upon Aardema's guilty plea ought to preclude him in a later civil action from denying that he was under the influence of alcohol. *Haring v. Prosise*, 462 U.S. 306, 313-14 (1983).

The cases cited by Artco do not suggest otherwise. It is true, for example, that in *Nathan v. Tenna Corp.*, 560 F.2d 761 (7th Cir. 1977), the court applied the Seventh Circuit's collateral estoppel doctrine. The court reached that conclusion, however, only after first consulting *Illinois* law. *Id.* at 763. *Nathan* explained that in diversity cases, federal courts were required to look to Illinois

law to determine the preclusive effect of a defendant's guilty plea. *Id.* The court further observed that "Illinois follows the general rule that the collateral estoppel or res judicata effect of judgments from other jurisdictions is determined by the law of the jurisdiction where the judgment is rendered." *Id.* Since the defendant in *Nathan* had been convicted in federal court, Illinois law required the application of federal principles of issue preclusion. *Id.* Here, by contrast, Aardema's plea was entered in Illinois state court, so I must adhere to Illinois' law of collateral estoppel. Once again, therefore, the question is whether, under Illinois principles of issue preclusion, the conviction based upon Aardema's guilty plea estops him in a later civil action from denying that he was under the influence of alcohol. I hold that it does.

Under Illinois law, collateral estoppel applies where: "(1) the issue decided in the prior adjudication is identical with the one presented in the suit in question; (2) there was a final judgment on the merits in the prior adjudication; and (3) the party against whom estoppel is asserted was a party or in privy with a party to the prior adjudication." *Long v. Elborno*, 922 N.E.2d 555, 562 (Ill. App. Ct. 2010). The Illinois Supreme Court has emphasized, however, that "[c]ollateral estoppel is an equitable doctrine," and that as a result, even "where the threshold elements of the doctrine are satisfied, collateral estoppel must not be applied to preclude

parties from presenting their claims or defenses unless it is clear that no unfairness results to the party being estopped." *Nowak v. St. Rita High School*, 757 N.E.2d 471, 478 (Ill. 2001).

To begin with, each of the three threshold elements is present here: the issue in the criminal case -- whether Aardema was under the influence of alcohol -- is the same issue that Artco seeks to preclude Aardema from relitigating here; a final judgment on the merits was reached in the criminal case by virtue of Aardema's plea; and Aardema, as the party against whom estoppel is asserted, was a party both to the criminal case and to the instant litigation.

Aardema insists that he never pleaded guilty to being "under the influence" of alcohol. Rather, he claims, he pleaded guilty only to 625 ILCS 45/5-16(A)(1)(a), which proscribes operating a watercraft with a blood alcohol concentration of .08 or more. He points out that § 5-16(A)(1)(b) is a separate provision that specifically prohibits operating a watercraft while under the influence of alcohol. *See* 625 ILCS 45/5-16(A)(1)(b) ("A person shall not operate or be in actual physical control of any watercraft within this State while . . . [u]nder the influence of alcohol."). Aardema was originally charged under both subsections, but the § 5-16(A)(1)(b) charge was dismissed as part of the plea agreement.

This argument ignores the fact that the section of the Illinois Code in which both offenses are included, 625 ILCS 45/5-16, is entitled "Operating a watercraft under the influence of alcohol,

-8-

other drug or drugs, intoxicating compound or compounds, or combination thereof." In other words, both § 5-16(A)(1)(a) -- operating a watercraft with a blood alcohol content of .08 or more -- and § 5-16(A)(1)(b) -- operating a watercraft while under the influence of alcohol -- are subsumed under the more general rubric of "operating a watercraft while under the influence of alcohol."

Aardema's argument also ignores the fact that Count I of the indictment specifically charges that "JASON AARDEMA . . . committed the offense of OPERATING A WATERCRAFT UNDER THE INFLUENCE OF ALCOHOL." Aardema Indictment, Artco Ex. B (Doc. 223-2). Similarly, during his plea colloquy, the judge informed Aardema: "You are charged in the Indictment in Count 1 with the offense of operating a watercraft under the influence of alcohol." Plea Tr., Artco Ex. E at 2:21-23 (Doc. 223-5). When asked whether he understood "the nature of the charge and the possible penalties that [he] face[d]," he answered that he did. *Id.* at 3:9-14.

Finally, Aardema also acknowledged at several points during his deposition that he had pleaded guilty to operating the vehicle while under the influence of alcohol. Thus, for example, when asked, "What two [offenses] do you think you were charged with?", Aardema answered, "Operating a motorboat under the influence and a reckless homicide." Aardema Dep., Aardema L.R. 56.1 Stmt. of Add'l Facts, Ex. 8 at 46:14-17 (Doc. 228-8). When asked later, "By pleading guilty did you understand that you were admitting that you were

-9-

operating a motorboat under the influence of alcohol?," Aardema answered "Yes." *Id.* at 59:4-9; *see also id.* at 53:15-22 ("Q: And do you recall Judge McSweeney-Moore explaining to you that you were charged with a Class 2 felony, operating a motorboat under the influence of alcohol which resulted -- or which was punishable by imprisonment of three to five years, including two years of mandatory supervision? A: Yes."). Aardema undeniably pleaded guilty to operating the watercraft under the influence of alcohol.

Given that the threshold criteria for applying collateral estoppel are met, it remains necessary under Illinois law to consider whether applying the doctrine would be unfair to Aardema. He argues that precluding him from litigating the issue would be unfair because he had little incentive to contest the matter in the criminal proceedings. In support of this claim, he cites the Illinois Supreme Court's decision in *Talarico v. Dunlap*, 685 N.E.2d 325 (Ill. 1997). The plaintiff in *Talarico* suffered from acute acne and was treated by a physician with the drug Accutane. *Id*. at 326. After using Accutane for a few months, Talarico -- who had no previous history of violence or criminal activity -- assaulted individuals on two separate occasions in a forest preserve. *Id.* He was eventually apprehended and charged with aggravated battery, aggravated unlawful restraint, armed violence, and aggravated criminal sexual abuse. *Id.* Pursuant to a plea agreement, Talarico pleaded guilty to two counts of misdemeanor battery. *Id.* He also

stipulated to the facts surrounding his crimes, and specifically "admitted to having committed the crimes 'intentionally and knowingly, without legal justification.'" *Id.*

Talarico later filed suit against Roche Laboratories, Accutane's manufacturer, and against Dr. Frank Dunlap, the physician who treated him with the drug. *Id.* at 327. The trial court held that Talarico was estopped from contending that Accutane had caused his aberrant behavior, since in the course of making his guilty plea, Talarico had specifically admitted to having committed the crimes "intentionally and knowingly." *Id.* The appellate court reversed the decision, however, and the Illinois Supreme Court subsequently affirmed the court of appeals. *Id.*

In its analysis, the court concluded that although the threshold requirements for issue preclusion were met, it would nonetheless be unfair to preclude Talarico from contesting in the civil trial the issue of whether Accutane caused his behavior. *Id.* at 331-32. The court observed that in "determining whether a party has had a full and fair opportunity to litigate an issue in a prior action, those elements which comprise the practical realities of litigation must be examined." *Id.* at 328 (quotation marks omitted). In particular, the court stated that it was important to take into account whether a litigant against whom collateral estoppel was to be applied had "an incentive to vigorously litigate in the former proceeding." *Id.* Where such an incentive is lacking, the court

-11-

held, there is reason to doubt whether admissions made in the context of a guilty plea should be given preclusive effect. *Id.* The court concluded that Talarico lacked a strong incentive to challenge the issue of whether Accutane had played a role in his conduct, and that as a result, giving preclusive effect to his guilty plea would have been unfair.

Aardema contends that it would be unfair to give preclusive effect to his guilty plea, because he lacked a strong incentive to litigate the question of whether he was under the influence at the time of the accident. He points out, for example, that in exchange for his plea, the two remaining charges against him were dropped. He also emphasizes that although he faced incarceration for up to seven years as a result of the charge, he ended up serving no time in a traditional prison setting, and instead spent 120 days in a boot camp.

The factors cited by Aardema pale in comparison with those present in *Talarico*. The court in *Talarico* first remarked upon the "generousness" of the plea agreement that he was offered, under which he received a sentence of one-year misdemeanor probation and psychiatric counseling. *Id.* at 330-31. But the court's decision was based on a host of other significant factors as well. Thus, for example, the court observed that it was "never . . . conceded [in the criminal proceedings] that Accutane was not the contributing factor to Talarico's criminal conduct." *Id.* at 330. On the

contrary, Talarico's counsel specifically mentioned Accutane as a mitigating factor to be taken into account in determining Talarico's punishment. The court also noted that at the time of his plea, Talarico's civil malpractice suit against Dr. Dunlap was unforeseeable. *Id.* at 331. Talarico's attorney had in fact advised Talarico that only Accutane's manufacturer could potentially be held liable for the drug's effects. Still further, the court took into account the fact that Talarico's offenses had been pardoned by the Governor of Illinois, and that even Dr. Dunlap had written the State's Attorney to ask for leniency on Talarico's behalf.

These extraordinary factors are not present in Aardema's case: as an initial matter, while Aardema was offered a deal in exchange for his plea, the terms were much less generous than those in *Talarico*. Aardema points out that the maximum sentence for his offense was three to seven years; however, the minimum sentence is probation. Aardema's decision to plead guilty in exchange for a sentence of four years is understandable, but the terms certainly were not irresistible. And while Aardema was ultimately sent to boot camp instead of prison, the judge explained to Aardema very clearly during the plea hearing that she could only make a recommendation that he be placed in the camp and that there was no guarantee that he would avoid incarceration. In addition, Artco points out that civil litigation in connection with the accident had already been initiated at the time of Aardema's plea. Thus, while

Talarico could not have foreseen at the time he decided to plead guilty that he would be foreclosing the ability to bring a civil suit against his physician, here Aardema had every reason to consider the ramifications that his plea might have for the civil case.

In short, Aardema had a strong incentive in his criminal case to litigate the question of whether he was under the influence of alcohol, and it is therefore not unfair to preclude him from relitigating the issue in the instant suit.

One final issue bears mentioning. Aardema expresses concern, however, that in addition to estopping him from relitigating the issue of whether he was operating the watercraft under the influence of alcohol, Artco also seeks to preclude him from contesting the question of whether he was the proximate cause of the accident. Although Artco's motion initially purports to seek summary judgment only with respect to the issue of whether Aardema was under the influence of alcohol at the time of the accident, as the parties' briefing has unfolded Artco has acknowledged that it also seeks to preclude Aardema from attempting to litigate the issue of whether his intoxication proximately caused the accident. Artco bases its argument on the language found in Count I of the indictment, which charges that Aardema:

> OPERATED A WATERCRAFT WITHIN THE STATE OF ILLINOIS WHILE THE ALCOHOL CONCENTRATION IN HIS BLOOD OR BREATH WAS AT A CONCENTRATION AT WHICH DRIVING A MOTOR VEHICLE IS PROHIBITED UNDER SUBDIVISION (1) OF SUBSECTION (a) OF

SECTION 11 - 501 OF THE ILLINOIS VEHICLE CODE [625 ILS 5/11- 501(1)(a)], TO WIT: .08 OR MORE, AND WHILE IN THAT CAPACITY, AND IN THAT CONDITION, WAS INVOLVED IN AN ACCIDENT WHICH RESULTED IN THE DEATH OF ANOTHER, TO WIT: MARK BIGOS, AND SUCH VIOLATION WAS THE PROXIMATE CAUSE OF THE DEATH OF MARK BIGOS, IN VIOLATION OF CHAPTER 625 ACT 45 SECTION 5 - 16(A)1.(a)\5 OF THE ILLINOIS COMPILED STATUTES 1992 AS AMENDED.

Aardema Indictment, Ardema Ex. B.

The record does not support a finding that Aardema conceded responsibility for being the sole proximate cause of the accident. In fact, the only reference to proximate causation is the one that appears in the indictment. Unlike the question of whether Aardema was under the influence, the issue of proximate causation was never discussed, or even mentioned, during the plea colloquy. Thus, Aardema is not collaterally estopped from litigating this issue.

### III.

For the reasons discussed above, Artco's motion for partial summary judgment is granted.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: April 27, 2010